**Clyde E. BARBER, Petitioner,**

v.

**INTERCOAST JOBBERS & BROKERS, Respondent.**

**No. B–84.**

Supreme Court of Texas.

June 14, 1967.

Rehearing Denied July 19, 1967.

Warren Burnett and Robert E. Hoblit and Robert D. Pue, Odessa, for petitioner.

Shafer, Gilliland, Davis, Bunton & Mc-Collum, Perry Davis, Jr. and Ray Stoker, Jr., Odessa, for respondent.

POPE, Justice.

This is a venue case which arises under § 9a, art. 1995, Vernon's Ann.Civ.St. Plaintiff, Clyde E. Barber, filed this suit in Ector County against Intercoast Jobbers & Brokers for the death of his wife in a collision between defendant's truck and the car his wife was driving. The trial court overruled Intercoast's plea of privilege, but the court of civil appeals reversed the trial court's judgment and ordered the cause

transferred to Dawson County. 410 S.W.2d 249. Intercoast, by a motion to dismiss, urges that Barber has failed to show that the decision of the intermediate court conflicts with "a prior decision." Barber urges that the intermediate court erred in failing to hold that he proved the accident occurred in Ector County by proof that the accident occurred four miles north of downtown Odessa and that Intercoast's driver was in the scope of his employment. In our opinion this court has jurisdiction and we affirm the judgment of the trial court.

Our first problem is one of jurisdiction. Barber's application for writ of error asserts that the decision of the court of civil appeals is in conflict with the decision in Buckaloo Trucking Co. v. Johnson, 409 S.W.2d 911 (Tex.Civ.App.1966, no writ). The intermediate court in the instant case held that the trial court could not judicially know that a point four miles north of downtown Odessa was in Ector County. In *Buckaloo*, the court held that it could judicially know that the western boundary of Nueces County was several miles west of Robstown and that Clarkwood was located between Corpus Christi and Robstown in Nueces County. Intercoast's argument is that *Buckaloo* was not "a prior decision" as required by section 2, art. 1728.[1] It is settled that "a prior decision" which can serve as a basis for jurisdiction in the Supreme Court because of conflicts, must be a decision that was rendered before and not subsequent to that of the case in which the petition for writ of error is filed. Westchester Fire Ins. Co. v. Redditt, 109 Tex. 211, 204 S.W. 106 (1913).

The decision in *Buckaloo* was rendered on December 15, 1966. Since there was no motion for rehearing, the judgment was final after December 30, 1966. The intermediate

---

1. "The Supreme Court shall have appellate jurisdiction co-extensive with the limits of the State, extending to all questions of law arising in the following cases when same have been brought to the Courts of Civil Appeals from appealable judgment of trial courts:

    \*     \*     \*     \*     \*

"2. Those in which one of the Courts of Civil Appeals holds differently from a prior decision of another Court of Civil Appeals, or of the Supreme Court upon any question of law material to a decision of the case."

court rendered its decision in the instant case on December 14, 1966, but there was a motion for rehearing which was not overruled until January 4, 1967. Intercoast's motion to dismiss urges that *Buckaloo* cannot be "a prior decision" since the court handed down its opinion one day after the court's opinion in this case. Barber contends, however, that *Buckaloo* was "a prior decision" because it became final prior to January 4, the time that the decision in this case became final.

■■■ The meaning of the term "decision" depends upon the context in which it is used and the purposes served. See Palmer Pub. Co. v. Smith, 130 Tex. 346, 109 S.W.2d 158, 159 (1937); Kidd v. Mc-Cracken, 105 Tex. 383, 150 S.W. 885, 887 (1912). Section 2 of art. 1728 is a basis for jurisdiction by the Supreme Court, because it affords the opportunity for the court to settle the law by resolving conflicts between decisions. As long as a decision is subject to withdrawal or change, it cannot be known whether a conflict between decisions will actually exist. It was not, therefore, until the time expired for filing a motion for rehearing that *Buckaloo* became a final decision and as such afforded a basis for the assertion of its conflict with a later decision.

Our conclusion that the term "a prior decision" means a final decision is fortified by Rule 483, Texas Rules of Civil Procedure, which states the powers possessed by the Supreme Court in acting upon an application for writ of error. It provides in part:

"In cases of conflict named in subdivision 2 of Art. 1728 of the Revised Civil Statutes of Texas, as amended, the Supreme Court shall grant the application for writ of error, unless it be in agreement with the decision of the Court of Civil Appeals in the case wherein the application is filed, in which event said Supreme Court shall so state in its order, with such explanatory remarks as may be deemed appropriate. In cases where the decision of the Court of Civil Appeals is in conflict with a previous opinion of the Supreme Court, the Supreme Court may, in

its discretion, without the necessity of granting the writ and hearing the case, reverse the same on the application for writ of error, making, at the same time, such further orders as may be appropriate."

■ The quoted portion of the rule directly refers to § 2 of art. 1728 and twice uses the term "decision" in the sense of a final decision since an application for writ of error can be filed only in a case in which the decision has become final. We conclude, therefore, that a conflict with "a prior decision" means a decision that is final. This court has jurisdiction.

■■ Our second problem is one of judicial notice with respect to the location and boundaries of counties. Barber in discharging his burden to prove that the accident occurred in Ector County introduced evidence that it happened at the intersection of 81st Street and Highway 385, four miles north of downtown Odessa. The trial court then judicially knew that the point of the collision was in Ector County. In our opinion that fact is one which is "certain and indisputable," Harper v. Killion, 162 Tex. 481, 348 S.W.2d 521 (1961) and may be judicially noticed with "verifiable certainty." 1 Mc-Cormick & Ray, Texas Law of Evidence, § 211.

■ This court held as early as 1866 that a court may judicially know that the state is divided into counties, the location of the counties, their contiguity with each other and their boundaries, dimensions and extent when defined by public laws. Wright v. Hawkins, 28 Tex. 452, 472 (1866). In Southwestern Investment Company v. Shipley, 400 S.W.2d 304, 307 (Tex.Sup.1966) this court said, "we judicially know that Amarillo is not situated wholly within Potter County," and in Harper v. Killion, supra, that a district court sitting in Cherokee County could "judicially notice the certain and indisputable fact of common knowledge that the entire city of Jacksonville is located in such county, * * *." Note, 35 Tex.L. Rev. 731. In those instances, not only the

boundaries of counties but the general boundaries of municipalities within counties were judicially noticed. Facts about well known and easily ascertainable geographical facts concerning counties are frequently judicially noticed. It was judicially known that Matagorda County is bounded by the Gulf of Mexico, Giddings v. Day, 84 Tex. 605, 19 S.W. 682 (1892); Bowie County is bounded by Arkansas, Wade v. Crump, 173 S.W. 538 (Tex.Civ.App.1915, no writ); the Colorado River is the south boundary of Coleman County, Giddings v. Day, supra; and the Angelina River separates Nacogdoches and Angelina Counties, Fidelity & Casualty Co. of New York v. Branton, 70 S.W.2d 780 (Tex.Civ.App.1934, writ dism.).

In *Buckaloo,* supra, the court judicially knew as a certain and indisputable fact that the western boundary of Nueces County is several miles west of Robstown, and Clarkwood is between Corpus Christi and Robstown. Brown Express Co. v. Dieckman, 344 S.W.2d 501, 505 (Tex.Civ.App.1961, no writ) held that the court may judicially know that a collision point located one-eighth of a mile south of the city limits of Rockdale was in Milam County. Smith v. Conner, 211 S.W.2d 630 (Tex.Civ.App.1948, no writ) held that proof that an accident occurred "about two miles east of the town of Katy, Texas" established the location of the accident in Harris County, and Martin v. Turnbow, 96 S.W.2d 730 (Tex.Civ.App.1936, no writ) held that a point six miles from McKinney was in Collin County. The proximity of Harlingen and Mercedes was judicially known in Ellis v. Heidrick, 154 S.W.2d 293 (Tex.Civ.App.1941, writ ref.). In our opinion these cases state the present status of judicial knowledge concerning geographical facts about the location of places in counties.

■ The court of civil appeals relied upon the case of Miller v. Burke, 401 S.W.2d 852 (Tex.Civ.App.1966, no writ) for its holding that plaintiff failed to prove the county in which the accident occurred. The case is not in point. Unlike the instant case

and those cited above, the plaintiff failed to prove the location of the accident with reference either to a county or any other place. The plaintiff alleged that the accident occurred in Houston, Harris County, but introduced no evidence concerning the place of the accident. In the present case Barber proved the location of the accident with reference to Odessa. This court judicially knows that Odessa is located in and is the county seat of Ector County. Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825 (1950); Turner v. Tucker, 113 Tex. 434, 258 S.W. 149 (1924); Carson v. Dalton, 59 Tex. 500 (1883).

■ Our final problem is Intercoast's insistence that the decision of the court of civil appeals was a correct one because all of the evidence showed that the driver of its truck was outside the scope of his employment at the time and place of the accident. The court of civil appeals discussed the point but reserved judgment. According to the evidence, the driver lived in Odessa but worked out of Lamesa. The day before the fatal accident he went to Lamesa and spent the night. The next day, about noon, he drove the truck from his employer's business destined to pick up a load of grain at Three Leagues which he was to deliver to California. He completed loading the truck at three o'clock in the afternoon and then drove west until he intersected the Lamesa-Midland Highway. He drove to Midland and on toward Odessa. Instead of proceeding along the main highway, at a point several miles north of Odessa he turned west on a loop to avoid the city traffic and to go directly to his home where he planned to spend the night. The accident occurred about five o'clock in the afternoon.

The evidence further showed that the driver's employer knew he would spend the night at home and leave early the following morning for California. One of the owners of Intercoast testified that the driver had been away from home and "had to go by the house and get the clothes. I told him to go by his home and get the clothes and spend

the night and to leave tomorrow morning." This was a customary practice. The driver was on a direct route to his home where he was authorized and needed to go, at least to pick up clothes he would need on the trip from Texas to California. There was evidence that he was in the course of his employment. United East & West Oil Co. v. Dyer, 139 Tex. 318, 162 S.W.2d 680, 683 (1942); Traders & General Ins. Co. v. Ihlenburg, 243 S.W.2d 250 (Tex.Civ.App. 1951, writ ref.); Southern Surety Co. v. Shook, 44 S.W.2d 425 (Tex.Civ.App.1931, writ ref.); Smith v. Conner, 211 S.W.2d 630 (Tex.Civ.App.1948, no writ).

The judgment of the court of civil appeals is reversed and that of the trial court is affirmed.