**Charles Brian SMITH, Appellant,**

v.

**UNIVERSAL ELECTRIC CONSTRUCTION COMPANY, Appellee.**

**No. 12–00–00035–CV.**

Court of Appeals of Texas, Tyler.

June 30, 2000.

Rehearing Overruled Aug. 3, 2000.

tered in favor of Universal. Holding that there was legally insufficient evidence to establish that Rodgers was acting within the course and scope of his employment with Universal when his pickup struck Smith, we will affirm.

### BACKGROUND

In early 1993, Rodgers went to work for Universal as a laborer on a four-man crew building substations. A few months after beginning his employment with Universal, Rodgers and his crew were assigned to work on a Universal project building substations between Mineola and Grand Saline, Texas, for the utility company known as SWEPCO. Rodgers lived in Plain Dealing, Louisiana, which was approximately a two-and-a-half hour drive from Mineola. Rather than return to his home in Louisiana each night, Universal gave Rodgers the option of staying, at Universal's expense, in a motel near the job site. Since the other three crew members lived in the area, Rodgers was the only member of his crew to take advantage of the motel paid for by Universal. However, of the other Universal crews working on this project, about six or seven men accepted the offer to stay in a company paid motel room rather than return to their residences each night.

All of the Universal employees on the Mineola to Grand Saline construction project, whether they stayed at home or in a company-provided motel, gathered for work at an appointed place in Mineola each morning. There, they would leave their personally owned vehicles and take company owned vehicles to where the company's work between Mineola and Grand Saline was proceeding. At the end of the work day, the workmen would return in company vehicles to Mineola where they had left their personal vehicles. The workers would then disperse from this site in their personal vehicles.

On April 22, 1993, during the third week of his employment on the Mineola to Grand Saline project for Universal, after

David Robertson, Longview, for Appellant.

Michael E. Starr, Tyler, for Appellee.

Panel consisted of RAMEY, C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

This is an appeal from a directed verdict. Charles Brian Smith ("Smith") brought suit against Universal Electric Construction Company ("Universal") for damages he allegedly suffered when his motorcycle was struck by a pickup driven by Thomas Rodgers ("Rodgers"), a laborer employed by Universal. In one issue, Smith challenges the directed verdict en-

completing work at the job site, Rodgers returned to the Mineola gathering place at about 6:00 p.m. Traveling alone, he then drove his pickup south on U .S. Highway 69 to Tyler. At approximately 6:40 p.m., he came to the intersection of U.S. 69 and Loop 323 in Tyler. There, seeing that traffic was snarled on his usual route to the Best Western, he attempted to reach it via a lane with oncoming traffic. While going west in the eastbound lane, he struck Smith, who was driving a motorcycle. Smith sued Rodgers and Universal for actual and future damages sustained and anticipated as a result of his injuries.

Prior to·trial, Smith settled with Rodgers for $25,000.00. After Smith presented his case to the jury but before Universal presented its case, the trial court granted Universal's motion for directed verdict on grounds that there was no evidence to show that Rodgers was acting within the scope and course of his employment with Universal at the time of the collision. Smith timely appealed. In one issue, he alleges that the trial court erred in granting a directed verdict.

### STANDARD OF REVIEW

In reviewing a directed verdict, we examine the evidence in the light most favorable to the person suffering the adverse judgment. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex.1996). When a directed verdict is granted against a party with the burden of proof, in order to secure a reversal, the losing party must show on appeal that he presented some evidence on each and every element of his claim. *Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761, 770 (Tex. App.—Beaumont 1996, no writ). We therefore review the record to determine if there is any evidence to establish that Rodgers was operating within the course and scope of his employment with Universal at the time his personal pickup collided with Smith's motorcycle.

### LEGAL SUFFICIENCY OF THE EVIDENCE

As a general rule in Texas, employers are not liable for accidents involving their employees while they are traveling to and from work. *See Texas General Indem. Co. v. Bottom*, 365 S.W.2d 350, 354 (Tex.1963); *Mata v. Andrews Transp., Inc.*, 900 S.W.2d 363, 366 (Tex.App.—Houston [14th Dist.] 1995, no writ). This general rule in Texas has been extended to employees traveling to and from a temporary job site, even when the employer has provided mileage reimbursement for the travel. *See London v. Texas Power & Light Co.*, 620 S.W.2d 718, 720 (Tex.Civ. App.—Dallas 1981, no writ).

Under Texas law, however, employers may be held liable for negligent acts by their employees under a theory of respondeat superior if the employee's actions were within the course and scope of their employment. *Mata*, 900 S.W.2d at 366. To show that an individual acted within the course and scope of his employment, a plaintiff must show that the act was: (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed. *Id.*

Here, there was no evidence in the record to show that Rodgers was operating his pickup under the authority of Universal. Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct nor participated therein, nor had the right or power to control it. *Kennedy v. American Nat'l Ins. Co.*, 130 Tex. 155, 107 S.W.2d 364, 366 (Tex.1937). "[U]nless it be shown that the use by the servant of his own automobile was expressly or impliedly authorized by the master, the master cannot be held liable for the torts of the servant committed in the use of the automobile." *Id.* at 367.

There was no evidence that Universal's business was furthered by Rodgers' return to the Best Western motel in Tyler. There is nothing to show that the act of which Smith complains arose directly out

of or was done by Rodgers in the performance of his work for Universal. *National Life & Acc. Ins. Co. v. Ringo*, 137 S.W.2d 828, 831 (Tex.Civ.App.—Dallas 1940, writ ref'd). Additionally, Rodgers was hired as a laborer by Universal, and there is no evidence that by traveling to the Best Western motel after completing his work for the day, he was accomplishing any purpose for which he was hired by Universal. A master is liable for acts of his servant under the doctrine of respondeat superior "only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises." *Parmlee v. Texas & New Orleans R.R. Co.*, 381 S.W.2d 90, 94 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.).

Smith contends that Rodgers was within the course and scope of his employment with Universal because he had undertaken a special mission on behalf of Universal or that there was a co-mingling, or dual purpose, for his travel to the Best Western motel in Tyler. Smith contends that two cases in particular, *Creekmore v. Horton & Horton, Inc.*, 487 S.W.2d 148 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) and *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.), support his position. In *Creekmore*, Tracie Pearman was employed by Horton and Horton, a building material business as a salesman. Pearman drove a car owned by Horton and Horton, Inc., which was equipped with a two-way radio so that he could be communicated with at any time. Horton and Horton further paid all of the expenses for the operation of the vehicle. Finally, Horton and Horton, Inc., paid for the repair of the automobile after Pearman's collision with Creekmore. The court concluded that the fact that even though Pearman was driving home when he collided with Creekmore, there was a presumption that because Horton and Horton owned the vehicle that Pearman was within the scope and course of his employment. There was insufficient evidence to rebut this pre-

sumption in the trial court's records. *Creekmore*, 487 S.W.2d at 149–150.

In the instant case, Rodgers owned the vehicle he was driving. Further, after his collision with Smith, he repaired his personal pickup at his own expense. There was no need shown for Universal to communicate with Rodgers, a laborer, in the way Horton and Horton, Inc. wanted to communicate with Pearman.

In *Torrealba*, Glenn Smith was employed by Dictaphone Corporation as a salesman. Smith lived in Stafford. On the date of his collision with Torrealba resulting in the latter's death, Smith had driven to Freeport to work. He then drove to Houston where he took care of some personal business. He then planned to drive to Bryan for the night where he would install some dictaphone equipment he had sold to a dentist. While looking for a place to cash a check to pay for his out-of-pocket expenses in Bryan, Smith's vehicle struck Torrealba, killing him. The court determined that although Smith had also been taking care of personal business in Houston prior to the time of the fatal collision, he was within the course and scope of his employment with Dictaphone Corporation because he was making preparations to leave for Bryan on company business. *Torrealba*, 520 S.W.2d at 870–72.

Here, there was no evidence that Rodgers was doing anything for Universal when he struck Appellant Smith's motorcycle with his personal pickup. Rodgers was not reimbursed for the use of his vehicle as Glenn Smith had been done in Torrealba. Rodgers was not furthering any business purpose of Universal as Glenn Smith had been doing for Dictaphone Corporation. Consequently, both *Creekmore* and *Torrealba* are distinguishable from the instant case as are the other cases cited by Smith for his dual mission contention.

The Appellant Smith further contends that the "special mission" exception applies to the facts in his case. The

"special mission" doctrine is an exception to the general rule that an employer is not liable for its employees' negligent acts while traveling from one work site to another. *Freeman v. Texas Compensation Ins. Co.*, 603 S.W.2d 186, 192 (Tex.1980); *Brown v. American Racing Equip., Inc.* 933 S.W.2d 734, 736 (Tex.App.—San Antonio 1996, no writ). Under this doctrine, when the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business. *Id.* The special exception is not applicable to this case because Rodgers was not traveling from one Universal work site to another Universal work site when his pickup struck Smith. He had ended his work day and was traveling on public highways and roads for his own purposes toward the Best Western motel in Tyler.

Smith emphasizes three cases, *Barber v. Intercoast Jobbers & Brokers*, 417 S.W.2d 154 (Tex.1967), *Gebert v. Clifton*, 553 S.W.2d 230 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dism'd), and *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354 (Tex. App.—El Paso 1993, no writ). In *Barber*, a truck driver working for Intercoast Jobbers and Brokers, had driven a company truck loaded with grain from Lamesa toward California for delivery there. While en route, he intended to stop at his home in Odessa to spend the night and get some clean clothes for the trip. This diversion had been approved by Intercoast. On the way to his home in Odessa, he was involved in a collision which was the subject of the case before the court. The court determined that there was some evidence that the truck driver was within the course and scope of his employment with Intercoast Jobbers and Brokers at the time of the collision. *Barber*, 417 S.W.2d at 158–59. Here, Rodgers was driving his personal vehicle and was not furthering the business of Universal as he drove to the motel.

In *Clifton*, George Gebert was an office manager for Wilson Industries, Inc. in Alice. Wilson had sent Gebert to Odessa because the Odessa office manager for Wilson had been fired and it was necessary for Gebert to take care of the company files and business at the Odessa office immediately. Gebert traveled to Odessa in Wilson's vehicle which had been furnished to him solely for the trip from Alice to Odessa. When the Wilson car driven by Gebert was involved in an collision in Odessa with another vehicle driven by Arthur Clifton, Jr., a suit was filed against Wilson. The court determined that Gebert was acting within the course and scope of his employment with Wilson when the collision in Odessa occurred. *Clifton*, 553 S.W.2d at 231–32. Here, however, as already noted, Rodgers was driving his own personal pickup when it collided with Smith's motorcycle. He was not furthering the business of Universal in his capacity as a laborer when the collision with Smith occurred.

In *Lee*, Larry Hummel was employed as an engine operator at Chevron's One Sand Hill Plant located in Crane County, Texas. Hummel lived in Monahans. However, after completing his daily shift at the Crane County Plant, Hummel drove directly from the plant to Odessa, where he spent the night at his own expense. The next morning, Hummel left Odessa to drive to the seminar mandated by his employer Chevron in Midland. On the way, he was involved in a collision with Bobby Lee and Linda Cunningham. The court determined that because his travel was at the direction of his employer and attendance at the seminar was for Chevron's ultimate benefit, he was on a special mission on behalf of Chevron. *Lee*, 847 S.W.2d at 355–56.

Smith contends that *Lee* is applicable to the facts in the instant case because Smith was staying at the Best Western motel for the benefit of Universal. He contends that the fact that Universal was paying Smith's motel bill confirms this. Universal contends that Smith was on his own personal time and was free to go wherever he wished after he left work at approximately

6:00 p.m. on April 22 in Mineola. We agree. Smith was not en route from one work site to another work site or work training site as Hummel was in *Lee*. Hummel was traveling specifically to Odessa to further his skills for the kind of work which he did on behalf of Chevron. Here, Rodgers, a laborer, was not benefitting Universal by driving to a motel after he had ended his work day. These three cases along with the other cases cited by Smith on the "special mission" doctrine are distinguishable from the facts in the instant case. Thus, we conclude that there are no factors in the instant case that would qualify this case as an exception to the general rule that an employee is not considered in the course and scope of his employment while driving his own vehicle to and from his place of work, even if that place of work is a temporary job site. *See London*, 620 S.W.2d at 719–720.

Finally, Smith contends that Rodgers was actually being paid by Universal at the time of his accident. Rodgers was paid for twelve hours on the date of April 22, 1993, by Universal. The records in evidence at trial showed that each one of the employees on Rodgers' crew was paid for twelve hours on April 20, 21, and 22, 1993. Rodgers testified that there was no typical length for their work days. His testimony at trial was that he reported to work on April 22 at 7:00 a.m. in Mineola and that he had ended his work day at approximately 6:00 p.m. Rodgers further testified that none of the employees on his crew punched a time clock and that the foreman kept up with their time worked. Universal contends that the employees on Rodgers' crew were apparently paid for more time than they actually worked on April 22nd. Universal contends that the fact that Rodgers was apparently paid for twelve hours of work when the undisputed evidence showed that he only worked from 7:00 a.m. to 6:00 p.m. is no evidence, or at the most, only a scintilla of evidence, that he was under the direction or control of it at the time of the collision at 6:40 p.m. on April 22nd.

"When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Having reviewed the record under the standard of review set forth in *S.V.* and *Jim Arnold Corp.* cited above, we hold that there was legally insufficient evidence to establish that Rodgers was acting within the course and scope of his employment with Universal when the collision with Smith occurred at 6:40 p.m. on April 22, 1993. Consequently, the trial court did not err in directing a verdict for Universal. Smith's sole issue is overruled.

The judgment of the trial court is *affirmed.*