

# NUMBER 13-24-00081-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MARVIN LEE JONES,**                                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                                 **Appellee.**

---

## ON APPEAL FROM THE 426TH DISTRICT COURT
## OF BELL COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Silva
### Memorandum Opinion by Justice Benavides

A jury convicted appellant Marvin Lee Jones of violating a magistrate's order of emergency protection (MOEP) by assault, a third-degree felony, sentenced him to ten years' imprisonment, and imposed a $2,000 fine. *See* TEX. PENAL CODE ANN. § 25.07(g)(2)(B). By seven issues that we have reordered, Jones argues: (1–4) the evidence was insufficient to support his conviction; (5–6) the jury charge contained

erroneous instructions; and (7) the trial court erred by imposing a fine without inquiring into Jones's ability to pay. We affirm.

## I.     BACKGROUND[1]

The indictment alleged that on or about July 20, 2021, Jones:

> intentionally and knowingly violate[d] the terms of an order served by Gregory Johnson of Precinct 4 of Bell County, Texas on July 17, 2021, under authority of Article 17.292 of the Texas Code of Criminal Procedure by intentionally and knowingly committing family violence against Ann Ronan, to-wit by committing the offense of assault.

Trial commenced on November 27, 2023. A certified copy of the July 17, 2021 MOEP and an attached data entry form were admitted into evidence. The order restrained Jones from, *inter alia*, committing an act of family violence or assault against Ronan.

The data entry form associated with the MOEP lists Ronan as the protected person and Jones as the respondent, identifies Jones as Ronan's "**HUSBAND**," and provides the same address for both Ronan and Jones. The MOEP was signed on July 17, 2021, and by its terms expired on September 14, 2021. Judge Gregory Johnson signed the order, and below his signature was the following: "Judge Presiding BELL COUNTY JUSTICE COURT, 4-1." However, the style of the case represents that the order was issued out of Coryell County. Judge Johnson represented in the MOEP that he "gave a copy" of the order to Jones and a section purporting to bear Jones's signature indicates that Jones acknowledged receipt of the MOEP.

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

2

Christopher Heeter, a detective with the Killeen Police Department testified that he responded to a call at the address listed in the MOEP in the early morning hours of July 20, 2021. When he arrived on the scene, he made contact with Ronan, who informed him "that she was upset about injuries . . . that she stated came from a boyfriend or fianc[é]." Detective Heeter observed "knots on her forehead and what looked like abrasions" on her head, wrist, and finger. Ronan was subsequently transported to the hospital for further examination. Video from Detective Heeter's body-worn camera was admitted into evidence and depicts a distraught Ronan discussing her injuries with first responders.

Patrick Blair, a police officer with the Killeen Police Department, also responded to the call on July 20, 2021. Dispatch advised that a protective order was in place of which Jones was the respondent. Officer Blair visited a different address associated with Jones and discovered Jones's vehicle, which was warm to the touch despite the cool weather, indicating that the vehicle had been "previously driven." Officer Blair was unable to make contact with Jones.

Brian Bascom, a police officer with the Killeen Police Department, responded to a call regarding a disturbance on the street listed on the MOEP twice on July 24, 2021, first at 7:37 a.m. and second at 9:15 a.m. Officer Bascom and Detective Leach could hear "very loud" music coming from inside the home. After knocking on the door and waiting outside for a few minutes, eventually Ronan answered the door. Officer Bascom noticed Ronan's "right eye was completely purple."

Linda Leach, a detective with the Killeen Police Department and Officer Bascom's partner, also made contact with Ronan on July 24, 2021. Detective Leach observed

Ronan "laying on the bed crying and complaining of pain, holding her ribs." Ronan's "eye was black from a bruise and it appeared the left side of her fact had a tan, tan-ish green bruise near her cheekbone and hairline." Officer Bascom and Detective Leach persuaded Ronan to go to the hospital.

Evan Crouse, an officer with the Killeen Police Department testified that on June 30, 2021, he responded to a call regarding a domestic disturbance. Upon arriving at the scene, he spoke to Ronan and Jones, and learned that the two had a "[d]ating relationship."

Photos of Ronan's injuries from July 20 and July 24 were admitted into evidence and primarily depict bruising on Ronan's face. Medical records from Ronan's two hospital visits were also admitted into evidence. According to these records, on July 20, Ronan reported that "she was assaulted by her significant other." She specified that "he hit her multiple times with his fist in her face and then kicked her after she fell down." The records reflect that Ronan suffered several head contusions and sustained a muscle strain in her neck from this incident.

The records from Ronan's July 24 visit indicate that she presented "with left-sided chest pain, right-sided head and face pain, neck pain, [and] right wrist pain after [a] physical assault" that occurred "at home around 9." Ronan identified her "partner" as her assailant. Ronan was "[t]earful" and "anxious throughout [the] interview and examination" and "[e]xpresse[d] severe anger toward her partner." The records from this visit reflect that Ronan suffered a rib fracture and a black eye on this date.

The jury found Jones guilty and imposed a ten-year sentence of imprisonment and

4

a fine of $2,000.[2]  This appeal followed.

## II.  SUFFICIENCY OF THE EVIDENCE

By his first four issues, Jones assails the sufficiency of the evidence to show that: (1–2) the MOEP was lawfully issued; (3) he was the perpetrator of the offense; and (4) he committed family violence.

## A.  Standard of Review & Applicable Law

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). In reviewing the sufficiency of the evidence, we consider all the evidence presented in the light most favorable to the verdict to determine whether the trial court was justified in finding guilt beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The hypothetically correct jury charge for this case would state the elements of the charged offense as follows: (1) Jones (2) in violation of an order served by Gregory

---

[2] Ronan did not testify during the guilt-innocence phase of trial.

Johnson of Precinct 4 of Bell County, Texas on July 17, 2021, under Article 17.292 of the Texas Code of Criminal Procedure (3) at a proceeding that Jones attended (4) knowingly and intentionally (5) committed family violence against Ronan, as that term is defined by § 71.004 of the family code. *See Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Harvey v. State*, 78 S.W.3d 368, 371 (Tex. Crim. App. 2002).

**B.      Analysis**

**1.      Validity of the MOEP**

By his first issue, Jones argues that the MOEP is invalid, as "a magistrate judge in Coryell County ha[s] no authority to issue a protective order for conduct occurring in Bell County." We first note that Jones did not object below to the validity of the MOEP, either on this or on any other basis. *See* TEX. R. APP. P. 33.1. Further, because it seems no appeal was taken from the MOEP, Jones's challenge to its issuance constitutes a collateral attack. *See Thomas v. State*, 571 S.W.2d 17, 18 (Tex. Crim. App. [Panel Op.] 1978).

The intermediate courts of appeals have essentially reached a consensus that collateral attacks on protective orders are not permissible in an appeal from a criminal conviction for violating that protective order. *See Poteet v. State*, 957 S.W.2d 165, 167 (Tex. App.—Fort Worth 1997, no pet.) ("[I]t appears that appellant is impermissibly attempting to collaterally attack the protective order after he has violated it."); *see also Nielsen v. State*, No. 02-19-00157-CR, 2020 WL 1808574, at *6 (Tex. App.—Fort Worth Apr. 9, 2020, pet. ref'd) (mem. op., not designated for publication) ("Nielsen's contention that the modified protective order is void constitutes a collateral attack on that order, one

6

that is not permissible in this proceeding."); *Hoopes v. State*, 03-16-00258-CR, 2018 WL 1977121, at *2 n.15 (Tex. App.—Austin Apr. 27, 2018, pet. ref'd) (mem. op., not designated for publication) ("Hoopes does not dispute the validity of the protective order or of its subsequent extension. Nor could he collaterally attack these orders in this appeal."); *Rogers v. State*, No. 09-15-00270-CR, 2017 WL 2698038, at *3 (Tex. App.— Beaumont June 21, 2017, no pet.) (mem. op., not designated for publication) ("Rogers . . . cannot collaterally attack the validity of the protective order on an appeal for his conviction for violating it."); *Glandon v. State*, No. 14-10-0020-CR, 2011 WL 345634, at *6 (Tex. App.—Houston [14th Dist.] Feb. 1, 2011, no pet.) (mem. op., not designated for publication) ("Appellant may not collaterally attack the April 9, 2008 protective order in this appeal from his conviction for violating that order."); *Ramirez v. State*, No. 08-07-00207-CR, 2008 WL 3522369, at *4 (Tex. App.—El Paso Aug. 14, 2008, no pet.) (mem. op., not designated for publication) ("Appellant cannot collaterally attack the validity of the protective order for lack of notice on an appeal for his conviction for violating it."); *Dillard v. State*, No. 05-00-01745-CR, 2002 WL 31845796, at *6 (Tex. App.—Dallas Dec. 20, 2002, no pet.) (mem. op., not designated for publication) (concluding that because appellant failed to directly attack the protective order for a lack of notice, "he may not now collaterally challenge the validity of the protective order . . . in this criminal appeal of his conviction . . . for violation of that order.").

Nonetheless, an appellant may collaterally attack a void judgment. *See Wright v. State*, 506 S.W.3d 478, 481 (Tex. Crim. App. 2016). And if it is true, as Jones suggests it is, that the MOEP was issued by a court lacking the authority to do so, the MOEP might

7

be void. *See Ex parte Seidel*, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001) ("Lack of *authority* to act in a particular manner may render the judgment either void or voidable depending on the type of the error, however."). Accordingly, we will assume without deciding that Jones may attack the MOEP on this basis for the first time on an appeal from his conviction for violating said MOEP.

The State has asked us to take judicial notice of certain facts in our resolution of this issue; namely:

1.     Judge Gregory Johnson is the Justice of the Peace for Precinct 4, Place 1 of Bell County, Texas.

2.     Judge Johnson has been the Justice of the Peace for Precinct 4, Place 1 of Bell County, Texas since January 4, 2021.

3.     Judge Johnson is not the County Judge of Coryell County, Texas. The County Judge of Coryell County, Texas is Judge Roger Miller.

4.     Judge Miller has been the County Judge of Coryell County, Texas since January 1, 2019.

Jones contests our taking judicial notice of these facts, arguing that doing so would have the effect of relieving the State from its burden to prove the protective order was valid. The State, on the other hand, argues that the appearance of "Coryell County" in the style of the MOEP "is obviously a clerical error," and that these facts help establish that. *See Rhodes v. State*, 560 S.W.2d 665, 667 (Tex. Crim. App. 1978) ("A judgment or sentence containing an irregularity which may be reformed on appeal or by nunc pro tunc entry is not void, and may not be collaterally attacked." (quoting *Barker v. State*, 334 S.W.2d 182, 184 (Tex. Crim. App. 1960)).

8

It is not clear from the record where the conduct giving rise to the MOEP occurred.[3] In any event, we will assume all relevant facts in Jones's favor; i.e., the MOEP was issued out of Coryell County for an offense occurring in Bell County. We deny the State's motion to take judicial notice. *See Hendee v. Dewhurst*, 228 S.W.3d 354, 377 (Tex. App.—Austin 2007, pet. denied) (explaining that "an appellate court's decision to take judicial notice of a fact on appeal is generally discretionary").

However, "[w]e may take judicial notice of the location of counties because geographical facts are easily ascertainable and capable of verifiable certainty." *Barton v. State*, 948 S.W.2d 364, 365 (Tex. App.—Fort Worth 1997, no pet.) (per curiam); *see Barber v. Intercoast Jobbers & Brokers*, 417 S.W.2d 154, 158 (Tex. 1967) ("Facts about well known and easily ascertainable geographical facts concerning counties are frequently judicially noticed."); *see also In re Estate of Hemsley*, 460 S.W.3d 629, 638 (Tex. App.—El Paso 2014, pet. denied) ("[A]n appellate court has the discretion to take judicial notice of adjudicative facts that are matters of public record on its own motion and for the first time on appeal."). Accordingly, we will take judicial notice of the fact that Coryell County and Bell County border one another.

"An offense committed on the boundaries of two or more counties, or within four hundred yards thereof, may be prosecuted and punished in any one of such counties . . . ." TEX. CODE CRIM. PROC. ANN. art. 13.04. To that end, simply because the conduct may have occurred in Bell County does not mean that a Coryell County court

---

[3] According to the affidavit of arrest for the underlying offense, Ronan allegedly informed law enforcement "that Jones was served with a restraining order from a prior assault he committed against . . . Ronan in Coryell County, Texas." However, the affidavit was not offered or admitted as evidence at trial.

was without jurisdiction to oversee criminal proceedings against Jones for that conduct. *See id.*

Jones relies on *Sanchez v. State* for his argument that a Coryell County magistrate could not issue a protective order to cover conduct that occurred in Bell County. *See* 365 S.W.3d 681, 686 (Tex. Crim. App. 2012). In *Sanchez*, a Montgomery County magistrate issued a search warrant that was to be executed in Harris County. *Id.* The Texas Court of Criminal Appeals concluded that "a statutory county court judge is limited to acting within the county of his court unless expressly authorized to act beyond that county," and the search warrant was therefore unlawfully issued. *Id.*

But here, the code of criminal procedure provides a magistrate the authority to issue a MOEP that is effective both in and outside of his county. If a person is arrested pursuant to a warrant issued in a different county, he may be brought before a magistrate in the county where he was arrested, rather than the county where the arrest warrant was issued. TEX. CODE CRIM. PROC. ANN. art. 15.18. The MOEP statute provides that "[a]t a defendant's appearance before a magistrate after arrest for an offense involving family violence . . . , the magistrate may issue an order for emergency protection." *Id.* art. 17.292(a). The statute does not limit the magistrate's authority to issue MOEPs only in cases where the defendant was arrested in the same county in which the conduct occurred. In fact, the statute expressly contemplates that some other court may eventually exercise jurisdiction over the criminal proceedings, and that police officers in other jurisdictions may ultimately be responsible for enforcing the MOEP. *Id.* art. 17.292(h), (k), (n); *see also id.* art. 7.15 (providing that when a magistrate deems it proper, he has "a

10

right to order *any* peace officer to protect the person or property of any individual threatened" (emphasis added)).

Jones has not affirmatively demonstrated that either of these scenarios did not occur prior to the rendition of the MOEP; i.e., he has not shown that he was neither brought before a magistrate pursuant to an out-of-county warrant nor that he was arrested for conduct occurring near the border of Coryell County. Accordingly, we conclude that he has not shown that the magistrate in this case lacked the authority to issue the MOEP in question. *See Ex parte Rodriguez*, 466 S.W.3d 846, 852 (Tex. Crim. App. 2015) ("For a judgment to be overturned on collateral attack, the record must affirmatively establish the *absence* of jurisdiction."). We overrule Jones's first issue.

### 2. Notice of MOEP

By his second issue, Jones argues that the evidence was insufficient to show that he had knowledge of the MOEP. *See Harvey*, 78 S.W.3d at 373 (explaining that § 25.07 of the penal code "requires some knowledge of the protective order"). As detailed above, the MOEP reflected that the magistrate served Jones with a copy of the order in open court and that Jones acknowledged his receipt of the order by signing it.

"The presumption of regularity is a judicial construct that requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court." *Light v. State*, 15 S.W.3d 104, 107 (Tex. Crim. App. 2000). "The burden is on the appellant to overcome the presumption of regularity." *Macias v. State*, 539 S.W.3d 410, 420 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

Jones argues that there is no evidence that it is his signature that appears on the protective order, instead of some other person's. We find our sister court's reasoning in *Dunn v. State* instructive:

> [I]n light of the presumption of regularity of the Order and the absence of any evidence in the record showing that the signature on the Order did not belong to appellant, the signature on the Order is evidence that appellant signed the Order and certified that he was present at the hearing, received a copy of the Order in open court, and had knowledge of the issuance of the Order.

497 S.W.3d 113, 117 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Like in *Dunn*, no evidence was presented to indicate that it was not Jones's signature on the MOEP. *See id.* Further, the magistrate certified that he served Jones personally with the MOEP, a piece of evidence that also went unchallenged below. Given the presumption of regularity we afford to judgments and given the lack of evidence to dispute the MOEP's recitals, we conclude that the evidence was sufficient to show Jones had knowledge of the MOEP. *See id.*; *see also Laredo v. State*, No. 08-13-0073-CR, 2015 WL 182079, at *2 (Tex. App.—El Paso Jan. 14, 2015, no pet.) (mem. op., not designated for publication) (concluding that appellant's lack of signature on protective order was insufficient to overcome presumption of regularity); *Dillard*, 2002 WL 31845796, at *5 ("Appellant's testimony that he did not receive prior notice of the hearing on the protective order is not sufficient to rebut the presumption of regularity of the order.").

We overrule Jones's second issue.

### 3. Family Violence

By his third issue, Jones argues that "[t]here is no evidence that Ronan and Jones were related, had lived together, or were parents of the same child." Jones further argues

that, although Ronan identified the person who assaulted her as being someone with whom she shared a dating relationship, there is no evidence that indicates she and Jones shared a dating relationship.

As relevant here, the penal code's definition of "family violence" incorporates by reference the family code's definitions of "household," "member of a household," and "dating relationship." TEX. PENAL CODE ANN. § 25.07(b)(1); TEX. FAM. CODE ANN. §§ 71.0021, 71.004(3), 71.005, 71.006. A "household" means "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." TEX. FAM. CODE ANN. § 71.005. This definition includes individuals who no longer live together. *Id.* § 71.006.

A "dating relationship" "means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *Id.* § 71.0021(b). In determining whether a dating relationship exists, the factfinder should consider: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. *Id.*

There is sufficient evidence to show both that Jones and Ronan shared a dating relationship and that they were members of a household. The MOEP's data entry form identified Jones as Ronan's husband and indicated that the two lived at the same address. *See id.* §§ 71.0021, 71.005; *Edward v. State*, 635 S.W.3d 649, 658 (Tex. Crim. App. 2021) ("Common usage of the word [boyfriend] by itself implies a continuing relationship of a romantic or intimate nature."). Additionally, Officer Crouse testified that when he spoke to Ronan on June 30, 2021, she informed him that she and Jones had a "[d]ating

relationship," indicating the continuing nature of their relationship. *See* TEX. FAM. CODE ANN. § 71.0021(b). Accordingly, we conclude that the evidence was sufficient to establish that Jones and Ronan shared a dating relationship and were members of the same household. We overrule Jones's third issue.

### 4. Identity

By his fourth issue, Jones argues that the evidence was insufficient to establish that he, rather than some other person, assaulted Ronan.

"The State must prove that the accused is the person who committed the crime charged." *Bin Fang v. State*, 544 S.W.3d 923, 927 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Identity may be proven by direct evidence, circumstantial evidence, or by reasonable inferences from the evidence." *Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). "For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

As previously mentioned, the MOEP identified that Ronan and Jones had a dating relationship on the date of its issuance: July 17, 2021. Law enforcement testified that Ronan was assaulted on July 20 and July 24, 2021. Ronan reported to medical professionals on July 20 that the abuse occurred "this [morning] amongst other times" and that the violence had either "gotten worse" or was "getting scarier." *See Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021) (explaining that we should look to the "events occurring before, during[,] and after the commissions of the offense" when determining the sufficiency of the evidence). In various parts of the medical records,

14

Ronan identified her "significant other" or her "partner" as her assailant.

Based on the evidence indicating Jones was Ronan's significant other throughout June and July of 2021, and the short span of time between the issuance of the MOEP and the assaults, the jury could have inferred that Ronan either was referring to a different "significant other," or continued considering Jones to be her "significant other." "If the record supports reasonable, but conflicting, inferences, we presume that the factfinder resolved the conflicts in favor of the conviction." *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016). We conclude that the circumstantial evidence indicating that Jones was Ronan's significant other and that Ronan's significant other assaulted her was sufficient to establish that Jones assaulted Ronan. *See id.*; *Roberson*, 16 S.W.3d at 167.

We overrule Jones's fourth issue.

### III.    JURY CHARGE

By his fifth and sixth issues, Jones argues that the jury charge was erroneous as it failed to: (1) fully define the term "dating relationship"; and (2) require the jury to find that Jones was present when the protective order was issued.

### A.    Applicable Law & Standard of Review

A jury charge must instruct the jurors on the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. "Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and must set out all the essential elements of the offense." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (cleaned up); *Perez v. State*, 689 S.W.3d 369, 379 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.). In a typical jury charge, "[a]bstract paragraphs 'serve as

15

a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)).

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). But when, as here, no objection is made to the alleged error in the jury charge, reversal is not required unless the error resulted in egregious harm. *See Alcoser*, 663 S.W.3d at 165. "Harm is assessed 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). "An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id.*

## B.    Analysis

### 1.    "Dating Relationship"

The jury charge in this case correctly defined the term "dating relationship" to mean "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." *See* TEX. FAM. CODE ANN. § 71.0021(b). However, it did not

16

include the additional statutory factors factfinders should consider when determining whether a dating relationship existed; i.e., (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship. *See id.* Jones argues that their omission from the charge was egregiously harmful.

These factors "are guideposts for the jury to weigh in evaluating whether the broader definition in Subsection (b)—a 'continuing relationship of a romantic or intimate nature'—is met." *Edward*, 635 S.W.3d at 657. But there is no requirement that the State introduce evidence of each of these factors nor is the jury limited solely to these factors when determining whether a dating relationship exists. *Id.* ("[T]hese factors are not standalone elements of the offense which the prosecution must prove beyond a reasonable doubt.").

"[W]hen [a] statutory definition is not included in the charge, it is assumed the jury would consider the commonly understood meaning in its deliberations." *See Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983). These factors are simply legislatively mandated common sense. Without needing to be instructed, most people would intuitively consider the length of the relationship, the nature of the relationship, and the frequency and types of interactions between the people in the relationship to determine whether "a continuing relationship of a romantic or intimate nature" existed. *See* TEX. FAM. CODE ANN. § 71.0021(b); *Granger v. State*, 584 S.W.3d 571, 578 (Tex. App.—San Antonio 2019, no pet.); *see also Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *4 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication)

17

(concluding that the statutory definition of "dating relationship" is not narrower than its commonly understood meaning). Further, it was not disputed below, either in the evidence or in the parties' arguments that Jones and Ronan were in a dating relationship. Accordingly, we overrule this issue.

### 2.  Notice of MOEP

In its jury charge, the trial court should define the term "in violation of an order issued under Section 6.504 or Chapter 85, Family Code [or] Article 17.292, Code of Criminal Procedure" to mean "in violation of an order that was issued under one of those statutes at a proceeding that the defendant attended or at a hearing held after the defendant received service of the application for a protective order and notice of the hearing." *Harvey*, 78 S.W.3d at 373 (alteration in original). The Texas Court of Criminal Appeals has also held that when the order in question is issued pursuant to Article 17.292, the charge can merely require the jury to find beyond a reasonable doubt that the MOEP was issued "at a proceeding that appellant attended." *Villarreal*, 286 S.W.3d at 327; *see* TEX. CODE CRIM. PROC. ANN. art. 17.292.

Here, in the abstract portion, the charge provided that "[a] person commits an offense if in violation of a magistrate's order the person knowingly or intentionally commits family violence, assault." Jones complains of the charge's failure to require knowledge of the MOEP. *See Harvey*, 78 S.W.3d at 373 ("[W]e agree . . . that the statute requires some knowledge of the protective order."). We will assume without deciding that the trial court erred.

18

### a. Entire Jury Charge

The application paragraph required the jury to find beyond a reasonable doubt that Jones "intentionally and knowingly violate[d] the terms of an order served by Gregory Johnson of Precinct 4 of Bell County, Texas on July 17, 2021, under authority of Article 17.292 of the Texas Code of Criminal Procedure."

The mens rea element requires "only that the respondent be given the resources to learn the [order's] provisions; that is, that he be given a copy of the order." *See id.* The application paragraph meets the "essence" of this by requiring the jury to find that the MOEP was "served." *See id.* Additionally, a defendant cannot "intentionally" or "knowingly" violate an order that he was never aware of. *See id.* And the jury was required to find beyond a reasonable doubt that Jones intentionally and knowingly violated the MOEP. "A party might be entitled to a fuller exposition of the requirements of the [relevant statute] upon special request. But the charge that was given did not entirely omit the mental state requirement for the element in question," and Jones did not request further instructions. *See id.* at 373–74. Accordingly, we conclude that the entire jury charge does not weigh in favor of a finding of egregious harm.

### b. State of the Evidence & Contested Issues

As we discussed above, the evidence indicated both that Judge Johnson served the MOEP in open court and that Jones acknowledged receipt of the MOEP. Immediately after opening statements, before the State called its first witness, the State offered the MOEP into evidence, referring to it as "a certified copy served on the defendant on July 17 of 2021." Defense counsel responded, "No objection." Jones never contested that he

19

had notice of the MOEP. Therefore, we conclude that this factor does not weigh in favor of a finding of egregious harm.

### c.    Arguments of Counsel

In opening statements, the State framed the case, stating, "You are going to hear that three days before [the assault] that [Jones] . . . was handed by a magistrate an emergency order for protection; telling him to stay away, do not have contact with her, do not assault her." In its closing, the defense's main arguments were that Jones's status as Ronan's assailant was not satisfactorily shown or, in the alternative, that the State did not show that Jones was the initial combatant.

In his analysis of this *Almanza* factor, Jones takes umbrage with the State's statements during closing that Jones "was not suppose[d] to have contact with her" and that he "wasn't suppose[d] to be where she was." Jones argues that by these statements, "the State was essentially inviting the jury to convict Jones under a theory for which he was not on trial." It is not entirely clear to us how, even if true, this bears on the jury charge's failure to include the proper definition for the mens rea element.

In any event, the State raised these additional provisions of the MOEP when summarizing the evidence produced at trial. It did not argue that these were reasons to convict Jones for violating a protective order by assault. But the State ultimately submitted to the jury that "[t]he Judge tells you your only decision is, was there a protective order in place and did he violate it by assaulting her. She said he did, there is no evidence to the contrary."

And the defense also addressed these additional provisions, arguing,

20

[I]f you believe that [Jones] must have been there at some point, that may be a violation of a magistrate's order. That is not a guilty verdict. Even if they could prove he was there, I am submitting to you, . . . that would be the misdemeanor violation of protective order, not committing assault as [a] means of violating the magistrate's order which is what you are charged with today.

That's what you have to consider, did he commit assault not just was he there when he was not suppose[d] to be.

True, the lack of discussion of this element—i.e., Jones's knowledge of the MOEP—in the parties' arguments further shielded its existence from the jury's consideration. However, the lack of discussion also signals that both the State and the defense knew that any challenge to this element was a non-starter. In other words, neither party's arguments demonstrated that this error "affect[ed] the very basis of the case." *See Alcoser*, 663 S.W.3d at 160. Accordingly, we conclude that this *Almanza* factor does not weigh in favor of a finding of egregious harm.

### d. Any Other Relevant Information

During voir dire, the State described the typical process of issuing a MOEP to the prospective jurors without any objection from the defense, stating, "When a person who is arrested, appears before a magistrate, they can be physically handed a piece of paper. It is a magistrate's order that you will not have contact, harass, threaten, annoy, there is a bunch of different limitations." Jones did not contest this description.

Based on our review of the entire record, we conclude that Jones was not egregiously harmed by this error. *See id.* We overrule Jones's sixth issue.

## IV. FINE

By his final issue, Jones attacks the imposition of the $2,000 fine, as he contends

the trial court wholly failed to inquire into Jones's ability to pay it. "[D]uring or immediately after imposing a sentence . . . , a court shall inquire on the record whether the defendant has sufficient resources or income to immediately pay all or part of the fine and costs." TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1). If the trial court determines the defendant is unable to immediately pay said fine and costs, the court may order the fine: (1) "be paid at some later date or in a specified portion at designated intervals"; (2) "discharged by performing community service"; (3) "waived in full or in part"; or (4) "satisfied through any combination of methods" of (1)–(3). *Id.*

At the conclusion of trial the court inquired, "I am assuming your status as far as your income [ha]s not changed in the last year. Would that be correct[?]" Jones confirmed the trial court was correct, and the court concluded Jones was indigent. In its judgment of conviction, the court stated that it "conducted an inquiry into [Jones]'s ability to pay" and that Jones was required "to pay or to make arrangements to pay" the $2,000 fine "[u]pon release from confinement," rather than immediately. *See id.* We conclude that the trial court adequately performed its duties under article 42.15(a-1), and we overrule this issue. *See id.*; *Sloan v. State*, 676 S.W.3d 240, 242 (Tex. App.—Tyler 2023, no pet.) ("[R]emanding the cause for a gratuitous inquiry when the resultant determination already is apparent from the record would amount to an unnecessary exercise and a waste of judicial resources."); *see also Hanson v. State*, No. 13-24-00022-CR, 2024 WL 3533413, at *3 (Tex. App.—Corpus Christi–Edinburg July 25, 2024, no pet. h.) (mem. op., not designated for publication) ("We find *Sloan* instructive, as have a number of other appellate courts.") (collecting cases).

22

## V.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of August, 2024.